IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JENNIFER GLEASON ALTIERI and JAMES McMAHON<br>Plaintiffs<br>vs<br>HOSPITAL VETERINARIO ISLA VERDE; DR. GILBERTO ZAMBRANA and the conjugal partnership composed by him and his spouse; MAPFRE PUERTO RICO JARDEN CORPORATION; ZURICH AMERICAN INSURANCE CORPORATION; and any joint tortfeasors and their respective insurance companies<br>Defendants | CIVIL 07-2245CCC |

## OPINION AND ORDER

This is a diversity action sounding in tort seeking damages for the alleged negligent actions performed against two Italian greyhounds which resulted in the death of one and serious injuries to the other. Before the Court now are separate motions for summary judgment on the issue of insurance coverage filed by defendants Hospital Veterinario Isla Verde (HVIV) (docket entry 52) and Mapfre Puerto Rico (Mapfre) (docket entry 55, as amended by docket entry 58).

The salient facts that serve as background for this insurance coverage dispute follow. Plaintiffs Jennifer Gleason-Altieri and James C. McMahon were the owners of two dogs, named Marcela and Gonzalo, which were left for boarding at HVIV from January 9, 2007 until January 12, 2007 while they went on a cruise. Upon returning from their trip, plaintiffs went to collect their dogs only to find out that Gonzalo had died and Marcela had been severely burned after both had been placed in a drying device allegedly for an extended period of time following a bath. In their complaint filed against HVIV, Mapfre, Dr. Gilberto Zambrana, and his conjugal partnership, Jarden Corporation and Zurich American Insurance

CIVIL 07-2245CCC                                        2

Corporation, plaintiffs claim that the injuries to their dogs were caused by defendants' negligent acts or omissions. Mapfre had issued a policy to Gabriel B. Castro d/b/a Veterinary Hospital Management and/or et als, numbered CBP-8773478-6/000, which included among its coverages a Commercial Property Coverage Part and a Commercial General Liability Coverage Part. Said policy was in effect on the date of the events alleged in the complaint, and included defendant HVIV as one of its insureds. Mapfre, however, denied HVIV both defense and coverage under said policy for the incident at issue in this case.

As a result of said denial of coverage, HVIV filed a crossclaim against Mapfre (docket entry 19) claiming that under the Commercial General Liability Coverage Part of the aforementioned policy Mapfre would be liable to pay any sums that the former could become obligated to pay as damages to the plaintiffs and also had the duty to defend it from the claims asserted by plaintiffs in their complaint. HVIV further alleged that, in denying coverage, Mapfre had violated its contractual obligations in bad faith. Mapfre counter-crossclaimed against HVIV (docket entry 20), averring that as the events alleged in the complaint were not covered by the Commercial General Liability Coverage Part of its policy, it had neither the duty to defend HVIV from those claims nor to pay for any of the damages claimed by plaintiffs for which HVIV may be eventually found liable.

In its motion for summary judgment (docket entry 52), HVIV's bases its claim of coverage on what it calls the "broad insuring agreement under the policy" it acquired from Mapfre. It relies on the following language of the Commercial General Liability Coverage policy issued by Mapfre which was in effect at the time that the incident at issue occurred.

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or

CIVIL 07-2245CCC                                                3

> "property damage" to which this insurance does not apply. We may, at our discretion, investigate an "occurrence" and settle any claim or "suit" that may result.
> ....
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" and
>
> (2) The "bodily injury" or "property damage" occurs during the policy period.
>
> c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

See Commercial General Liability Coverage Form (hereinafter CGLCF), Section 1 - Coverages.

The policy, in turn, defines "coverage territory" to include Puerto Rico (see CGLCF, Section V, item (4)) and "occurrence" as an accident (see CGLCF, Section V, item (12)). "Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

See CGLCF, Section V, item (15).

While HVIV recognizes in its motion that there are exclusions to the coverage, it dismisses as inapplicable those raised by Mapfre as affirmative defenses in its answer to the Amended Complaint (docket entry 28, pp. 14-15). The exclusion of coverage for property damage resulting from the rendering of professional veterinarian services established in the endorsement "Exclusion - Professional Veterinarian Services" is not pertinent, HVIV claims, because according to its reading of the allegations of the complaint the injuries to the dogs took place when they were being dried after being bathed and were not the result of any "[m]edical, surgical, diagnostic testing or dental procedures used for the

CIVIL 07-2245CCC                                    4

prevention, detection, diagnosis or treatment of any sickness, disease, condition or injury in animals...." See Endorsement CG2158 (03-97). HVIV contends that equally inapplicable, for the same reasons, is the endorsement "Exclusion - Services Furnished by Health Care Providers" which excludes from coverage property damage arising out of:

> 1. The rendering or failure to render:
>
> a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;
> b. Any health or therapeutic service, treatment, advice or instruction; or
>
> c. Any service, treatment, advice, or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming.

See Endorsement CG 2244 (10-93).

    HVIV goes on to point out that two other limitations of coverage raised by Mapfre in its affirmative defenses relate to the Building and Personal Property Coverage and, as such, do not impact the commercial general liability coverage. Finally, HVIV avers that while Mapfre failed to raise in its affirmative defenses that the "care, custody or control" exclusion of the Commercial General Liability Coverage Form applies to the incident alleged in the complaint, and should be deemed waived, even if deemed applicable it would only serve to exclude coverage for the damages to the dogs themselves but the emotional distress and other damages claimed by the plaintiffs would still be covered by the broad language of the policy. Upon concluding that it is entitled to coverage under the Commercial General Liability Coverage Policy obtained from Mapfre's, HVIV asks that summary judgment be entered in its favor granting the crossclaim it filed against said insurer.

    Mapfre, as expected, opposed HVIV's motion for summary judgment (docket entry 61). In essence, it reiterates that as the damages claimed by plaintiffs against HVIV are excluded from coverage under the policy due both to the "professional veterinarian services" exclusion and the "care, custody and control" provision contained therein, its decision not

CIVIL 07-2245CCC                                    5

to provide defense and coverage to its insured was neither wrongful nor made in bad faith. Thus, it asks that HVIV's motion for summary judgment be denied.

As this is a diversity case, the substantive laws of Puerto Rico apply. Under Puerto Rico law, the duty of an insurance carrier to defend the insured is broader than its duty to indemnify. Pagán-Caraballo v. Silva-Delgado, 122 D.P.R. 105, 111 ( 1988). "The duty to defend the insured in actions covered by the policy should be measured, at first instance, by the allegations in the complaint filed in the specific case. The court should examine all the allegations made by the plaintiff and, based on a joint interpretation of the same, determine whether there is a possibility that the insured is protected by the policy issued in his favor."

We, thus, start our analysis by taking a close look at the allegations of the amended complaint (docket entry 24). The complaint is divided into six sections, two of which are particularly relevant to our inquiry: "III. Factual Allegations" and IV. Causes of Action." Under the section entitled "Factual Allegations," plaintiffs allege that on January 9, 2007 they left Marcela and Gonzalo under HVIV care until they returned from a cruise ship vacation on January 12, 2007 and when they called to pick them up were told by HVIV personnel that they had not been bathed and HVIV's policy was not to hand in the pets until they had been bathed. Allegations no. 2, 4. Upon arriving to pick up their pets a few hours later, plaintiffs were told to wait for defendant Dr. Zambrana who informed them that immediately after the bath Gonzalo had a violent reaction provoked by something administered during the bath which caused his death. Allegations no. 5-8. Doctor Zambrana also informed the plaintiffs that Marcela had just been vaccinated against diphtheria and was under observation. Allegation no. 11. Some time later, Marcela was given to the plaintiffs with an IV and she had bruises all over her body, which plaintiffs believed had been caused by an allergic reaction to a shampoo or flea dip. Allegations no. 16-17. At plaintiffs' request, both Gonzalo's corpse and Marcela were transferred to the Hospital de Animales de Villa

CIVIL 07-2245CCC                                6

Caparra, where Dr. José Luis Ferrer informed them that Gonzalo and Marcela had been placed on a drying device after their bath where its high temperature coupled with the long time they were left under it resulted in the death of Gonzalo and in burns all over Marcela's body.  Allegations no. 14, 22-23.

In pleading their causes of action, plaintiffs aver, under the heading "First Cause of Action Negligence against HVIV and doctor Zambrana," as follows:

> 35. Defendants had a duty to provide plaintiffs' pets, Marcela and Gonzalo, with reasonable medical (veterinarian) attention that satisfied the exigencies generally recognized by the veterinarian profession in light of the modern means of communication and teaching, and acceptable veterinarian care, as measured by the standards of the veterinarian profession, and to protect Marcela and Gonzalo from further physical and emotional harm while they were in their care.
>
> 36. Defendants, through their negligent acts or omissions of their staff and veterinarians, breached their duty to provide Marcela and Gonzalo with acceptable veterinarian care, as measured by the standards of the profession, and to protect Marcela and Gonzalo from harm while they were in their care.
>
> 37. Defendants attempted to conceal the damages inflicted on Marcela and Gonzalo in contravention of the standards of the veterinarian profession.
>
> 38. As a direct result of their negligent acts or omissions of Defendants, through their agents and them, Gonzalo and Marcela did not receive adequate veterinarian treatment or care, including, but not limited to, the proper operation of the drying devices used to dry Gonzalo and Marcela after their bath, the proper care in dealing with the injuries suffered by Gonzalo and Marcela, and using the proper treatment and care of Gonzalo and Marcela while under their care.
>
> 39. The inadequate treatment and care, as evidence[d] by [the] death of Gonzalo and the permanent injuries suffered by Marcela, was the direct and proximate cause of plaintiffs' damages.

Under the title "Second Cause of Action Malpractice against doctor Zambrana," plaintiffs state:

> 41. Defendant doctor Zambrana, trough his negligent acts or omissions breached his duty to provide Marcela and Gonzalo with acceptable veterinarian care, as measured by the standards of the profession, and to protect Marcela and Gonzalo from harm while they were under his care.
>
> 42. Defendant doctor Zambrana's concealment of the causes of death and injury to Gonzalo and Marcela respectively did not comply with reasonable

CIVIL 07-2245CCC                                    7

>medical (veterinarian) attention that satisfied the exigencies generally recognized by the veterinarian profession.
>
>43. The inadequate treatment and care by doctor Zambrana, as evidenced by the death of Gonzalo and the permanent injuries suffered by Marcela, was the direct and proximate cause of plaintiffs' damages.

It is evident from the relevant factual allegations and the description of the causes of action contained in the complaint that the gist of plaintiffs' claims against defendant HVIV are in the nature of a malpractice claim. To that extent, Mapfre is correct in asserting that said claims are not within those insured by the Commercial General Liability Coverage Policy given the clear language of its endorsement "Exclusion - Professional Veterinarian Services:" "This insurance does not apply to . . . 'property damage' . . . arising out of (1) medical, surgical, diagnostic testing or dental procedures used for the prevention, detection, diagnosis or treatment of any sickness, disease, condition or injury in animals, including the related furnishing or prescription of drugs or medical, dental or surgical supplies."

While it is true that the introductory factual allegations do speak of plaintiffs having left their dogs at HVIV for boarding and not medical treatment, and the cause of both dogs' damages is attributed to the bath given to them as a service incidental to their boarding and not to any veterinarian treatment, it is also undeniable that by being left for boarding at HVIV both dogs were placed under its care, custody and control. Thus, to the extent that the allegations also speak of HVIV having failed to protect both dogs from harm while they were placed under its care (see e.g. allegation no. 36 - "Defendants, through their negligent acts or omissions of their staff and veterinarians, breached their duty to . . . protect Marcela and Gonzalo from harm while they were in their care,") these claims are also excluded from coverage under the Commercial General Liability Coverage Policy "care, custody or control" exclusion which provides: "This insurance does not apply to 'property damage' to ... personal property in the care, custody or control of the insured." See CGLCF, Section I, item (2)(j)(4).

CIVIL 07-2245CCC                                            8

In fact, HVIV does recognize that under said provision the damages to plaintiffs' dogs are not covered. See Motion (docket entry 53), at p. 17. HVIV posits, however, that under the broad language of the policy the consequential damages claimed by plaintiffs, such as their emotional distress, are insured. This contention is simply nonsensical. The Commercial General Liability Policy Form specifically states that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages <u>because of . . . 'property damage' to which this insurance applies</u>." (Emphasis ours.) As the Court of Appeals observed in <u>American Home Assur. v. Libbey-Owens-Ford Co.</u>, 786 F.2d 22, 26-27 (1st Cir. 1986), in relation to a policy containing nearly identical language, "such a policy would cover only consequential damages resulting from property damage to which the policy applies." See also <u>Hartford Acc. 7 Indem. Co. v. Pacific Mut. Life Ins. Co.</u>, 861 F.2d 250, 254-255 (10th Cir. 1988). Thus, as for the reasons explained above the damages suffered by the two dogs are not covered by the Commercial General Liability Coverage Policy, the consequential damages arising from those damages, <u>i.e.</u> plaintiffs' emotional damages, are not covered either. HVIV's contention to the contrary is, therefore, meritless.

Finally, we also note that HVIV argues that since Mapfre failed to specifically raise in its affirmative defenses that the "care, custody or control" exclusion of the Commercial General Liability Coverage Form served to bar coverage for the incident alleged in the complaint, it waived it. This contestation also fails. Although Mapfre listed eighteen (18) affirmative defenses in its answers to the Amended Complaint (docket entry 28) and to HVIV's crossclaim (docket entry 20) but failed to refer specifically to the policy's "care, custody or control" exclusion clause, such failure is not a waiver. Mapfre did allege in both answers that its responsibility was "subject to the limits . . ., conditions, clauses and **exclusions** of the policy...." <u>See</u> affirmative defense 13 in docket entries 20 and 28. (Emphasis ours.) While state law may define the nature of the defenses, in a diversity case the Federal Rules of Civil Procedure provide the manner and time in which defenses are

CIVIL 07-2245CCC                                             9

raised and when waiver occurs. <u>Arismendez v. Nightingale Home Heath Care, Inc.</u>, 493 F3d 602, 610 (5th Cir. 2007). It is established that a defendant should be permitted to raise an affirmative defense for the first time in a motion for summary judgment if there is sufficient notice and no prejudice results to the other party. <u>Moore's Federal Practice</u>, §8.08[3] at 8-51 (3d ed. 2009). Here, it appears obvious that HVIV was aware of the "care, custody or control" exclusion contained in the policy; in fact, HVIV anticipated in its motion for summary judgment that it would be raised by Mapfre. Thus, we see no prejudice resulting to it from its consideration. In any event, we also note as a matter of substantive law that the Supreme Court of Puerto Rico has established that the doctrines of waiver or estoppel cannot be used to create a liability for a condition specifically excluded by the specific terms of the policy. See <u>López v. Atlantic Southern Ins. Co.</u>, 158 D.P.R. 562, 571-573 (2003).

Thus, as the damages claimed by plaintiffs in their Amended Complaint are clearly excluded from coverage under the terms of the Commercial General Liability Coverage Policy which Mapfre issued to HVIV, said insurer had neither a duty to defend let alone to pay for the claims brought in the amended complaint against the insured. Consequently, HVIV's Motion for Summary Judgment on its cross-claim against Mapfre (docket entry 52) is DENIED.

We turn now to the Motion for Partial Summary Judgment filed by Mapfre (docket entry 55, as amended by docket entry 58). In it, Mapfre seeks dismissal of both plaintiffs' Amended Complaint and the Crossclaim filed by HVIV against it. To the extent HVIV's crossclaim is entirely based on the Commercial General Liability Coverage Policy, after having concluded above that said policy does not cover the damages alleged in the Amended Complaint, Mapfre's request for partial summary judgment on the crossclaim must be GRANTED. Accordingly, the crossclaim filed by HVIV against Mapfre (docket entry 19) is ORDERED dismissed. Partial judgment shall be entered accordingly.

CIVIL 07-2245CCC                           10

Dismissal of the amended complaint against Mapfre would also be warranted for the same reasons.  In its motion for partial summary judgment, however, Mapfre acknowledges that the policy it issued to HVIV also contains a Building and Personal Property Coverage which provides coverage for personal property of others, including animals that are killed. Mapfre contends, however, that said policy is modified by a "Veterinarians' Property Endorsement" that allegedly excludes damages that are expected and intended by the insured, and damages to animals resulting from the grooming of an animal.  Neither the Building and Personal Property Coverage Policy nor the Veterinarians' Property Endorsement to which it refers in the motion were submitted as exhibits thereto.  The Court, however, was able to identify the Building and Personal Property Coverage Policy and a document entitled "Veterinarians' Property Endorsement - Part 1" within the exhibits submitted by HVIV together with its motion.  See Exhibits A & C to docket entry 54.  The endorsement, in fact, was attached to a letter that Mapfre's counsel sent plaintiffs' attorneys asking for the voluntary dismissal of their claims against it for the alleged lack of coverage under the policy at issue.  While the endorsement there included contains identical language to that quoted by Mapfre in its motion, it is unclear whether said endorsement was actually the one which was made a part of the policy since it is identified as Endorsement No. SCP04-506A, which does not correspond in all its characters with Endorsement No. SCP04-506 which is the one actually listed among those applying to the Commercial Property Coverage policy.  We, in turn, have examined the text of the Building and Personal Property Coverage Policy contained in the record.  The Building and Personal Property Coverage Form provides:  "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  See Building and Personal Property Coverage Form (hereinafter BPPCF), Section A - Coverage.  Included among the types of property considered "Covered Property" is:

CIVIL 07-2245CCC                                11

>    Personal Property of Others that is:
>
>    (1) in your care, custody or control, and
>
>    (2) Located in or on a building or structure at a premises described in the Declarations or in the open (or in a vehicle) within 1000 feet of the described premises.
>
>    However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

BPPCF, Section A(1)(c).  Under the section titled "Property Not Covered," however, the policy lists "[a]nimals, unless they are killed or their destruction is made necessary, and then only if they are owned by others and boarded by you, or if owned by you, only as 'stock' while inside of buildings or in the due course of transit."  See BPPCF, Section A(2)(b).

While under the BPPCF the dog named Gonzalo would classify as covered property since it was an animal owned by others that was killed while being boarded by the insured, it is unclear on the present record whether the BPPCF's basic coverage was in fact modified in the manner claimed by Mapfre by the Veterinarians' Property Endorsement to which it makes reference in the motion.  "Gonzalo" thus, classifies as covered property under the BPPCF and, as a result, plaintiffs may claim directly against Mapfre for its damages. Accordingly, Mapfre's request for summary judgment on plaintiffs' Amended Complaint is hereby DENIED as to the claim for the physical los of Gonzalo.  It is GRANTED as to all other claims.

Having disposed of the issues presented in both dispositive motions, we need go no further.  Accordingly, and for the reasons stated, HVIV's Motion for Summary Judgment on its cross-claim against Mapfre (**docket entry 52**) is DENIED, while Mapfre's request for partial summary judgment on that crossclaim (**docket entry 55, as amended by docket entry 58**) is GRANTED.  However, Mapfre's request for summary judgment on

CIVIL 07-2245CCC                                            12

plaintiffs' Amended Complaint is hereby DENIED.  Partial judgment shall be entered DISMISSING the crossclaim filed by HVIV against Mapfre (docket entry 19).

    SO ORDERED.

    At San Juan, Puerto Rico, on September 25, 2009.


                                            S/CARMEN CONSUELO CEREZO
                                            United States District Judge